```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                    FORT WORTH DIVISION
```

TPI PLASTIC PARTNERS, LTD.       §
d/b/a Universal Precision        §
Plastics                         §
                                 §
VS.                              §     ACTION NO. 4:04-CV-769-Y
                                 §
GERBER PRODUCTS COMPANY          §

<u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

Pending before the Court is Defendant's Motion for Summary Judgment [document number 27]. After review of the motion and related briefs, evidence highlighted by the parties, and applicable law, the Court concludes that the motion should be granted.

## <u>I. Facts</u>

In October 1997, the predecessor of plaintiff TPI Plastic Partners, Ltd., doing business as Universal Precision Plastics, ("TPI") entered into a supply agreement with defendant Gerber Products Company ("Gerber"). Under the agreement, TPI was to manufacture an "over-molded" baby bottle nipple that Gerber would market as the "Gerber One Piece Nipple." In June 2001, Gerber terminated the parties' agreement. TPI filed suit, claiming that Gerber had breached the agreement. Gerber now seeks a summary judgment.[1]

---

[1] In its response to the motion, TPI reurges its prior motion to continue the Court's summary-judgment ruling so that TPI may take the depositions of three of Gerber's employees. The Court concludes that its prior ruling on this issue should stand; TPI has not presented the affidavit required by Federal Rule of Civil Procedure 56(f) to support a request for continuance. And, as noted in the Court's prior ruling, TPI has not explained why these depositions are necessary before it can adequately respond to the motion, nor has it explained why the depositions were not properly noticed and completed prior to the August 15 discovery deadline.

## II.  Applicable Law

A.  Summary-Judgment Standard

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however.  Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim.  *See id.* at 323-25. When the moving party has carried its summary judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).

B.  Breach of Contract

In order to recover in an action for breach of contract under Texas law, the plaintiff "must establish (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 288 (5th Cir. 2004).  An unambiguous contract is construed by the court as a matter of law.  *See Coker v. Coker*, 650 S.W. 2d 391, 394 (Tex. 1983).

## III.  Analysis

TPI contends that Gerber breached the contract by (1) wrongfully attempting to terminate the agreement before purchasing one hundred million pieces of the product; (2) failing to reimburse TPI for the unamortized portion of the cost of certain machinery and equipment needed to manufacture the product; (3) failing to order any product after November 1, 2000; and (4) failing "to give proper, written notice before failing to perform." (TPI's Original Pet. at 5, ¶ 14.) Gerber contends that summary judgment is appropriate in its favor on all points.

### A.  Termination

The supply agreement provides that TPI "shall manufacture and sell to Gerber, and Gerber shall purchase from [TPI], a minimum of 100,000,000 pieces of the [p]roduct (the 'Quantity'), . . . at a rate of 10,000,000 pieces maximum per year." (Gerber's App. at 3, ¶ 1A.) With regard to the term of the contract, however, the agreement provides as follows:

> 4A.  The Agreement shall be effective from Commencement Date and continuing until the Quantity has been purchased by Gerber. . . .
>
> . . . .
>
> 4C. Notwithstanding section[] 4A. . . . , if Gerber should reasonably determine that sales or projected sales of the Product . . . do not justify the continuance of the production, distribution and marketing of the Product, . . . then Gerber may, on sixty (60) days prior written notice, terminate this Agreement.

(Gerber's App. at 4, ¶ 4.)  Thus, Gerber's obligation to purchase the quantity specified in the agreement is subject to the provisions of the termination clause.  That clause gives Gerber the right to

terminate the agreement on sixty days' written notice if it reasonably determines that sales of the product do not justify continued production. On June 18, 2001, Gerber's director of purchasing sent a letter to TPI terminating the contract, stating as follows:

> As you are aware, sales of this product ha[ve] been far below our projected volume over the past three years. Therefore we have determined that such sales performance does not justify the continuance of the production, distribution and marketing of the product. Based on that, I am sending you written notice here to terminate the Supply Agreement.

(Gerber's App. at 17.) Thus, Gerber terminated the contract, effective sixty days after June 18, 2001.

TPI complains that Gerber has failed to present evidence demonstrating that it reasonably determined that sales did not justify continued production. TPI misplaces the summary-judgment burden. As previously mentioned, the plaintiff in a breach-of-contract action must prove that the defendant breached the contract. *Pegram*, 361 F.3d at 288. As a result, at the summary-judgment stage, the defendant need not present evidence that it did not breach the contract; rather, it need only point out that the evidentiary documents in the record are insufficient to demonstrate a question of fact as to whether it breached the contract. *See Celotex*, 477 U.S. at 323-24. It then becomes the plaintiff's burden to come forward with admissible evidence demonstrating the existence of a question of fact as to that element of its claim. Thus, in response to Gerber's motion, it is TPI's burden to present admissible evidence demonstrating that Gerber's decision to terminate the agreement due to lagging sales performance was unreasonable, thus creating a question of fact as to whether Gerber complied with the termination

provision of the contract. This TPI has failed to do.

## B. Equipment Costs

TPI's petition contends that Gerber failed to reimburse TPI for the unamortized portion of the cost of certain machinery and equipment needed to manufacture the product.[2] TPI fails to point to any provision of the agreement, however, that required Gerber to reimburse TPI for this equipment upon termination. Indeed, the contract specifically provides that "[i]n the event of termination, "Gerber will be obligated to purchase only the unusable Gerber Materials (as defined in Paragraph 5E.) remaining. The Molds shall immediately be delivered to Gerber at [TPI]'s expense." (Gerber's App. at 4, ¶ 4D.) The term "Gerber materials" is defined as "Synergistics Synprene TPE grade in assorted color tins and Clarified/Clear Polypropylene Grade #9374 or any other materials reasonably necessary for the production of the Product." (Gerber's App. at 5, ¶ 5E.) The contract does not require that Gerber reimburse TPI for machinery and equipment costs.[3] As a result, summary-judgment is appropriate on this claim as well.

## C. Product Ordering

---

[2] The Court notes that TPI's brief in support of its response to Gerber's summary-judgment motion fails to specifically address this issue.

[3] TPI's response contends, in conclusory fashion, that paragraphs 4C (the termination provision) and 4D (the materials-purchased-upon-termination provision) are "so one-sided and commercially unreasonable . . . in the light of [TPI]'s substantially unrecouped investment and previous course of monthly dealings" as to raise the question of whether they are unconscionable under section 2.302 of the Texas Business and Commerce Code. In addition to the fact that TPI failed raise this issue or otherwise invoke this provision in its pleadings, it has failed to present evidence tending to support the contention. See Wade v. Austin, 524 S.W. 2d 79, 86 (Tex. Civ. App.--Texarkana 1975, no writ) ("In determining whether a contract is unconscionable or not, the court must look to the entire atmosphere in which the agreement was made; the alternatives, if any, which were available to the parties at the time of the making the contract; the non-bargaining ability of one party; whether the contract is illegal or against public policy; and, whether the contract is oppressive or unreasonable.").

TPI contends that Gerber breached the contract by discontinuing orders of the product in November 2000, seven months prior to its June 2001 written notice of termination.  TPI suggests in conclusory fashion that because "Gerber chose not to furnish a yearly purchase order but, instead, chose to conduct its dealing by monthly orders" it was obligated to make monthly purchases "because the course of dealing . . . established a practice." (TPI's Am. Mem. in Opposition to Gerber's Mot. for Summ. J. at 5.)  TPI has failed to point to any provision of the supply agreement, however, requiring that Gerber make monthly orders.  Indeed, the scope-of-work portion of the agreement only obligates Gerber to a minimum total product purchase and a maximum annual purchase; there is no requirement that Gerber make monthly purchases.  *See* Gerber's App. at 3, ¶ 1A.  Although the parties' prior course of dealing can be used to give meaning to or supplement terms of an agreement, TPI's attempt to use course-of-dealing to create an entirely new requirement in the contract is unavailing.  *See* TEX. BUS. & COMM. CODE ANN. § 1.303 (Vernon Supp. 2005) ("A . . . course of dealing between the parties . . . is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement.").

Furthermore, the parties' agreement specifically provides that the "[a]greement shall not be modified, altered, or amended except in writing signed by both parties." (Gerber's App. at 10, ¶ 22.) TPI has not presented any of Gerber's purchase orders or any other document demonstrating that Gerber agreed, in writing, to modify the

contract to impose monthly purchase obligations.[4]

D. Notice of Failure to Perform

In an apparently related vein, TPI complains that Gerber failed "to give proper, written notice before failing to perform." (TPI's Original Pet. at 5, ¶ 14.) TPI apparently complains about Gerber's failure to give notice of termination until June 2001, even though it ceased placing orders in November 2000. TPI has failed, however, to present evidence tending to demonstrate that in so doing, Gerber failed to comply with the terms of the parties' contract.

## IV. Conclusion

Gerber's Motion for Summary Judgment [document number 27] is hereby GRANTED. TPI shall take nothing by way of its claims against Gerber.

SIGNED February 28, 2006.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[4] TPI presents what it contends is a copy of an e:mail communication from Mike Gill, a Gerber employee, indicating as follows: "First to resolve the issue of low daily output of 19,675 PCs Vs our goal of 28,507[] based on a 7 day week, or 10,000,000 PCs per year for the 40mm OPNC." (TPI's App. at 3.) TPI contends that this e:mail makes "clear that Gerber intended to purchase 10,000,000 pieces per year at the rate of 28,507 per day." (TPI's Am. Mem. in Opposition to Mot. for Summ. J. at 5.) Even assuming this e:mail is sufficient to constitute a writing signed by the parties, it sets forth only a "goal" of 28,507 per day and does not evidence the parties' intent to convert that goal into a contractual requirement.